Good afternoon. We have five consolidated cases in Ray Matthews, Dupree, Williams, Smith and McNeil, numbers 16-20, 27, 20, 80, 22, 73, 23, 12, 24, 14 and 24, 22. Ms. Freeman and Mr. Sanders. Good afternoon, your honors. Arianna Freeman for the five petitioners in this matter. I'd like to reserve two minutes for rebuttal. Just make sure your voice is up just a little bit. I will, your honor. I'd like to reserve two minutes for rebuttal. That's fine. It's undisputed in this matter that these five petitioners and all those similarly situated have made exactly the showing that they're required to make at this authorization stage. They've showed a new rule that was made made retroactive by the U.S. Supreme Court that was previously unavailable. That is all that is required of them and their petition should be authorized. Despite the argument might be that we don't know if there's a new rule technically with respect to 924 C. And your response to that would be the response to that is that Hoffner squarely addresses that. Hoffner says whether something would require a new rule is is an analysis under 2255 F3, whether the right asserted here would require a non-privilege extension. Hoffner says that's something that's left to the district court in the first instance. And Hoffner emphasizes the importance of authorization at this stage and permitting the district court to make that to make that analysis in the first instance. Because otherwise there is no review of the authorization decision. There's no there's no benefit of the analysis from the district court. There's no rehearing petition. There's no certiorari petition. Well, now, if there's just like 200 cases riding on this that are similar. Right. And there's not I don't think the records need a lot of delving into. Is there anything stopping us from picking up, say, that timeliness issue that the government raises at this point? I understand that in the usual case, I suppose the district court would would take that on. But is there anything really prohibiting us from taking it on in the first instance? Rather, there are two things that this court from doing that. One is the language of the statute itself, which specifically states, you know, with twenty two fifty fifty four B being incorporated into twenty two fifty five H. It says you're only looking for a prima facie case. Right. That that Johnson applies to nine twenty four C's residual clause. The second reason is that Hoffner says that the timeliness inquiry is left for the district court in the first instance. And that's because the language of twenty two fifty five at three is whether the petitioner, the right, the petitioner asserts was recognized by the United States Supreme Court and Johnson. We have a couple of our sister circuits of disagree with what you're saying. The Williams case in D.C. vassal in the Fourth Circuit. A couple other ones as well say that we can go. Notwithstanding the prima facie case that we can consider a timeliness argument. How do you respond to that there? Well, you know, there is now after after Hoffner, there is precedent from from the circuit that guides the circus analysis and limits it to prima facie. Before that, it was also just the longstanding practice of this circuit and presidential opinions such as Pendleton. Let me ask you this question. You contend that determining the applicability of the element of force clause at the gatekeeper stage is ill advised because you say in your brief, the task is notoriously difficult, often requiring analysis of the statutes, the visibility and examination of obscuring conflicting cases. But here, when you look at Johnson and Wilson, it seems like there is a path to address the issue. And it would appear that with the crime of violence issue and the fact that two of the five have twenty one, 13 convictions that that would preclude them from further consideration. Well, Your Honor, it does appear simple, but it really requires an analysis of what was charged in the indictment. What what may have been changed during perhaps a plea colloquy and other factual issues that are not appropriate for this court to take on, if only because if mistakes were made, there would be no further review. And so let me ask you to be specific about that, because the government, I think, makes a good argument on this that I need your help. So the crime of violence is pretty clearly defined. Looking at Johnson and Wilson, if that's so and there's no real question about whether or not the twenty one, 13 falls within the ambit of crime of violence, then what's the difficulty that may arise? That's I'm not getting that. I'll give you one example, Your Honor. And it's the Sebastian Williams case on page 142 of the appendix. It is an indictment for Sebastian Williams. Count one of the indictment charges conspiracy to commit Hobbs Act robbery. Count two charges, the 924 C offense. And it says to it the Hobbs Act robbery charged in count one. So I get that alone is shows that there's a bit of a discrepancy between the conspiracy to commit Hobbs Act robbery that is charging count one. And and what is is, in fact, the underlying offense for the 924 conspiracy or the completed Hobbs Act robbery? It's interesting that you choose because I actually think you have a better argument on the Hobbs Act conspiracy. But can you give me a hypothetical on twenty one, 13, because I don't I don't think there's that uncertainty. Right. So I don't have a hypothetical that's based on on the underlying records of the cases, the five cases that are before you today. Your Honor. But I think that the example that I just mentioned about how there could be at least some arguable ambiguity in and the charging documents and the offense of conviction, what, in fact, was presented to the jury. This just goes to show that that we should take what we should do with the statute requires us to do, which is authorize these petitions because they've made such an important claim that they may be may be subject to a nonconstitutional conviction and sentence and and let the district court sort out whether the merits of the claim, you know, whether in fact it is the residual clause that was implicated here that the district court determined that in the first instance. And if the district court does determine that and it may be that in these bank robbery cases, it will be a fairly easy question for the district court. But again, you know, we we argued in Hoffner. And I think the court found in Hoffner that the burden on the district courts is is really secondary to the importance of authorizing these applications when we have met the prima facie standard. I agree with the argument that the burden on the district court may not be critical or persuasive consideration. But, you know, I think one one thing that's pretty clear is when we have precedent and it's fairly clear and the deleterious effect for your client is foreclosure, it's kind of that's just the way the way it goes. And it would seem on the twenty one thirteen that that it's clear. But but I get your argument. Right. Your Honor. Also, we did make this argument in our reply brief that whether something is otherwise foreclosed by precedent, which I think is the term that Hoffner used, we believe that phrase applies to whether the prima facie case has been made. If there is precedent that says there is no prima facie case, then then this court can deny authorization. But if the precedent, the foreclosure by precedent is something such as Wilson, that absolutely goes to the merits. And we know that because of what Hoffner says. We know that because of what Pepper says, whether whether the residual clause applies is a merits question. Then then authorization is still required. Do we even know that these five petitioners were sentenced under the residual clause in 924 C? We do not know that. And that is what the district court would need to determine in the first instance. If the district court determines that that the motion is timely under 2255 F3. What if it was clear that they were it was under the elements clause? Well, I believe that's what Judge Greenaway was asking about with respect to the Wilson decision on bank robbery. And again, the law is clear on on the bank robbery piece. But we would want we would ask the court to authorize the petitions nonetheless so that we can ensure by taking a close look at the documents in the record of the case that it was in fact a bank robbery predicate to the 924 C conviction. Are you saying that it obviously will Wilson implicates the elements clause? Are you saying that by us considering that in the merits of of McNeil and Dupree, that that is a merits determination? It is a merits determination, Your Honor. Whether 924 C's residual clause is implicated is a merits determination. And that's something that that pepper is made clear. I guess the question is, how can bankruptcy robbery not be. But under an element clause of C. I think I do not imagine, Your Honor, that petitioners would be arguing that once these petitions are authorized, that the district court should not apply Wilson and the district court would be bound by Wilson. But the question is whether authorization should be granted so that these petitioners can get before the district court and have a close look taken at whether, in fact, Wilson is implicated in their cases. So there's 200 of these cases. You're seeking is to have them all authorized. They all go all throughout our circuit, all different district judges eventually. And the government raises timeliness in every one of those cases. And eventually the case back on timeliness. Why? Why are you saying is your argument we can't decide timeliness now? That's why we shouldn't. The argument is that Hopner says says that the circuit does not decide timeliness now. And really, the exact same thing happened with the mandatory guidelines cases. There were dozens of those. And this court in Hopner said, we're not going to decide this in the first instance. And again, to return to where to where I began, there's a really important reason why. And that's because because further review is necessary if this court were to make a mistake on the authorization. However, there are plenty of opportunities, as Hopner says, to remedy a mistaken authorization in favor of the petitioner. But but yes, we are asking for all 200 to be authorized. And if there are easy questions for the district court, the district court will do that. That's what district courts do. They often will resolve cases that they find are turn on on easy questions. But also one other example in the juvenile life or sphere. We had hundreds of second or successive petitions in this case that sought authorization. The precise issue was before this court. Are they timely or are they not? In fact, there there was a real question as to retroactivity. This court authorized those Miller versus Alabama cases before Montgomery versus Louisiana even came out to say Miller is retroactive. Right. So there was a real question of retroactivity. And we still and specifically with the Corey Grant case where Mr. Grant was a federal prisoner, he was challenging application. He was invoking Miller versus Alabama to challenge his life sentence under the mandatory guidelines. And there, too, that's really that's the real predecessor to Hoffner and Corey Grant. And and that's in the Pendleton case. It was a companding case. This court said, we're not going to determine whether Miller extends to the mandatory guidelines. And you authorize that petition. Could you back up? I'll see you back up. Mr. Sanders. May it please the court. I'm Stephen G. Sanders. This is the United States attorney on behalf of the United States. Respondent in these five matters. I want to go straight to the statute of limitations issue. And I don't know. I've read Hoffner several times and I see in there where this court said we leave the statute of limitations issue to the district court. The statute of limitations argument wasn't made as such in Hoffner. The government set the basis for thinking it's not a merits determination. Because in the prime, the kind of fish is standard, right? If you cannot if you have a claim that's foreclosed by such a person, it's as a matter of law. Because it's untimely or because, as we'll argue in the second half of this, that the predicate offense is a crime of violence under the elements. You can't you can't make the primary fish is going. And let me just regard as you pointed out in Ray Vassal from the fourth circuit. I mean, there's a line in there which speaks clearly to this issue. It says the statute does not require such an exercise in futility. In other words, they meant if the claim was barred as a matter of law by the statute of limitations, there's no need for the circuit to authorize a claim. Just to have the district court do what happened in the case in green and then have it come back up and have that same result occur in all these cases. But to be clear, generally, the district court would take on this kind of thing. It's within our discretion to take on this type of an issue, right? Yes, that's what I'm saying. And there's a difference between remember the the authorization that those gateway factors apply for two now circumstances. One is where there's an alleged new rule. The other one is where you come up with newly discovered evidence, right? That you claim is a defendant claim is earth shattering and would probably result in acquittal. Well, those types of cases create a situation where you have to look at the record to determine whether the claim is really being brought within a year of when that discovery was made. Was it reasonable diligence? Those are fact bound, record bound things that a circuit court is probably not in a position to do with within the narrow framework of that statute. It's different when you have a purely legal issue like this. And unlike in Hoffner, now we have the decision in green, which didn't exist when Hoffner was being litigated before this court. So green provides this court with a roadmap. Well, suppose the suppose we suppose we view green as. As not applicable here, because when you when you look at green, it has a particular interpretation. Obviously, you contend that green renders each petition untimely. However, in green, we stated Johnson recognized a right to not be sentenced under a statute that fixed in an impermissibly vague way higher range of sentences for certain defendants. Now, when you think of that, isn't there an argument that green doesn't on all fours mandate a particular course here? If if that were the only relevant line in green, I might agree with your honor. But elsewhere, and I think close to where you're on a question, I'm not taking a position. No. So let me quote you one more sentence from green, when I think is sort of the money sentence for us. Johnson's holding as to the residual clause in the ACCA created a right only as to the ACCA and not a broader right that applied to all similarly worded residual clauses such as that found in the advisory guidelines. So isn't there a distinction to be drawn with the mandatory mandatory sentencing guidelines? Because it was the question there was whether it applied to the mandatory sentencing guidelines here. You know, Johnson's ACCA here. We have 924 C. I mean, it's it's two statutes there. It's statute versus the guidelines. I grant you that. But but let me take the argument one step further. We made this in the brief. That is, in order to apply Johnson to 924 C, you need an intermediate step, which is that you need a holding from the Supreme Court that 924 C 3 B mandates application of the categorical approach. And that that is a very an open question. So if it's after what you're saying, it's it isn't a question of it's too late. It's that you're too early. Right. Exactly. But this is H. Right. And we and as we said in the brief, when and as this court said in green, when and if the Supreme Court. But the green green dealt with that. Right. Right. Green was decided under 20 to three. Right. And this is this is gatekeeping. And in other words, and you can see here that there's a I think you did. And maybe I'm putting words in your mouth that there is a prima facie case that's been made here. If if indeed it's timely, if it's timely, we we agree as we have to under Hoffner that they rely on a new rule that's retroactive. So and then I'm looking at where look, the writer of Green is right here. So he can correct me if I'm wrong. But we also note that our decision in Hoffner does not compel a different result. This is deals with that in Hoffman. We considered only whether a petitioner had made a prima facie showing under 22 to 44. That is claim relied on Johnson such that he was entitled to file a successive petition and determining that the petitioner had done so. We applied a permissive and flexible standard and expressly noted that it is for the district court to decide in the first instance, whether the claim had merit or whether the petitioner's reliance on Johnson is misplaced here. By contrast, before reaching the merits, you must consider whether the question we left to the district court in Hoffman, that is whether you can rely on the Johnson under F3 is the case. And in that case, you couldn't. So we haven't. It seems like it's one could argue timeliness has been taken off the table, at least with respect to H. But I don't know. I mean, the government didn't argue in Hoffner that both sides of that coin didn't argue it. There's no prima facie case under H2. And for the same reason, I mean, we dropped a footnote about it, but we didn't present this case as an F as an F3 case in Hoffman. And I think because we didn't, it was perfectly understandable that in green, this court said that issue is is not been foreclosed. It's not been ruled on. It's open to the government to argue. It was open in the district court and then up through this court on appeal. That doesn't mean it's not open to us here. Well, what about the argument that there was an express reservation on this on the specific mandatory guidelines point? In Greene's consideration, and there is no express reservation here. Well, for the reasons we say in the brief, we don't think you need a case like life, like Beckles in the interim saying that this is an open question in order for this for there not to be a new rule that they can rely on. As we said in both Johnson and DiMaio, the critical issue was that the clause in question compelled a categorical approach. And in DiMaio, the government didn't didn't make the argument that the court should not apply one. The court didn't have to hold that it was the statute best read that way. But as we pointed out in a brief, there were four justices, at least, who said they might consider a different approach. And now we have at least two circuits who have bought on to the government's constitutional doubt argument. And in agreeing that a case specific approach would save the statute from invalidation. And so our point here is that for every purposes, in order for them to have the rule that they need to rely on to make their claims timely and not premature, you need an intervening Supreme Court decision compelling the conclusion that the categorical approach applies. Now, if I may turn to the issues about the elements clause real quickly, I wanted to. Is this for Dupree and McNeill or all of them? Well, I mean, Dupree and McNeill are clearly the easiest ones. I mean, I think you conceded the uncompleted Hobbs Act conspiracy, which leaves open the question of the completed Hobbs Act conspiracy. Right. So let's start with the bank robbery. Right. I mean, first of all, there's nothing that stops this court from considering that issue at this stage. I mean, Hoffner cited to Inouye Hubbard from the Fourth Circuit for the proposition that a challenge to the mandatory guidelines was could be brought. I thought in Peppers we said that we characterized the act of determining whether a prior felony conviction qualifies under the elements clause was a merits issue. The court did say that, but in the context of rejecting the government's argument that the petitioner had to prove that he or she had been sentenced under the residual clause merely to get in through the gateway. We're not saying that any such proof has to be offered. We're saying that if the crime in question, the predicate offense qualifies under the elements clause, then the Johnson attack on the residual clause is entirely beside the point. If your crime, for instance, for David Dupree, armed bank robbery is as a matter of Third Circuit law, a crime of violence under the elements clause of 924 C. Therefore, any infirmity in the residual clause is utterly irrelevant. It doesn't advance the ball. In fact, there would need to be a ruling on the constitutionality of the residual clause because. How do I get around Peppers? The decision there is just it says. To interpret the language, as the government suggests, would effectively turn the gatekeeping analysis into a merits determination, which meets the purpose of the jurisdictional review. We thus conclude that a movement like Peppers satisfied the jurisdictional requirements of H2 is H2 motion by showing that a new rule of constitutional law. He advances may doesn't have to may require resentencing. Is that all you have to do for prima facie? But even if that's all you have to do, if if the other option on the table is foreclosed by second precedent, I mean, it doesn't. Right. Again, it doesn't it doesn't move the ball because you have third circuit precedent firmly compelling the conclusion that this crime is a crime of violence under one half of the statute that you're trying to attack. And therefore, a you know, to allow a defendant to get through the gateway and then make this argument again, a district court wouldn't reach the question of whether the residual clause was invalid. Johnson, because the district court would be obligated to say your claim fails under. Under Dominique Johnson or under Wilson, whichever the applicable cases. So I don't think that that language from Peppers does not close this court from considering it. So one way you could perceive of this going, maybe not the best way from your standpoint, but one way you could perceive of it going is that among the 200, any anyone who had a 21, 13 would be out. That's correct. And. And tell me about the distinction you're drawing between uncompleted, which you've conceded and completed Hobbs Act conspiracy. Well, and that's based on Robinson. But so an uncompleted conspiracy, right, which is just an incoherent offense where the conspiracy was foiled before it was able to achieve its objective. I'm going to interrupt for just one second just to sort of bring you into where I'm at, because it seems to me that if you've conceded on on on one, then it would seem there would be logic to just letting both of them through, at least for purposes of authorization. I would I would think you can see that I'm not going to fight that. I would just I would just by way of explanation say the reason we made a distinction in the brief on that is because under Robinson, right, where you have a completed conspiracy and and a brandishing, you knew that that conspiracy carried out its objective. And it was its objective was carried out at the barrel of the gun was the language Judge Roth used under Robinson that seemingly would count as a under the quasi case specific approach that was adopted for 924 C3A there. So it would seemingly foreclose it. But I'm not going to fight that here. I think there's a legitimate question whether conspiracy is going to count under and could only count under the residual clause, which has been called into question. And so, like I said, I'm not going to push hard on that one. But on the other predicates that we pointed out, well, you have Wilson, you have Johnson for regular Hobbs Act conspiracy. Right. That does for regular Hobbs Act offenses that don't involve conspiracy. You have Robinson is simply no need. And I'll go back to the point I was making before. In Ray Hubbard from the Fourth Circuit. Right. That's a case that at the authorization stage allowed a claim claim attacking the mandatory guidelines to go forward. But earlier in that opinion, the Fourth Circuit did not allow a challenge to a 924 C conviction to go forward because the predicate involved there was and I'm just looking here. Was was armed bank robbery and Fourth Circuit precedent had already held that that was categorically a crime of violence under the elements clause. And so Hubbard would not allow at the authorization stage that claim to go forward. And there's it's not just the Fourth Circuit. There's Hubbard. There's Herbie. The Eleventh Circuit does it. The Sixth Circuit. I cited the Gordon case. And I can represent to you that there are a number of seven circuit orders which do not allow cases to go forward on this basis. They don't appear in West or Lexus because they don't get filed with the electronic services. You're about to go red. But I have a question. So please disregard. Petitioners contend that Robinson cannot apply to convictions that occurred before a lien was decided because there are no facts about brandishment or discharge that have either been found by the jury or were the subject to a plea. So I understand you disagree with the substance of that argument, but do you agree that pursuant to Hoffner, in order for the petition to be authorized on this point, we need only find that petitioners Eileen argument is not frivolous. I don't agree with that because I think phrase that way there. It sounds like they're making an Eileen claim, which is trying to get relief about the wrong fact finder. Right. Judge versus jury, because each of those pre Eileen cases, there still is a finding of fact on brandishing. It was just made by the judge, not by the jury. And again, we don't think that this court has held that Eileen is not retroactive on collateral review. And so I don't think they can smuggle in on the prediction on the theory that Robinson necessarily requires a jury finding in order for its quasi case specific approach to apply that there has to be a jury finding or else the case has to be authorized. And again, the alternative argument we make in our brief is the alternative to Robinson's approach is a categorical approach. And every circuit to address this question, other than the Third Circuit, has held that how that robbery is a crime of violence as a matter under the elements clause. So it gets them nowhere. Thank you. I'm sorry. I apologize. Just just to just circle back to what I was getting at at the beginning. Your your argument is tell me if I'm wrong. We can get to the to the timeliness issue, but we don't have to get to the timeliness issue. That's correct. But since it's a purely legal issue and it's the same issue in all these cases, it's before you. It's these cases have been stayed now for quite some time. It is as efficient for this court to entertain. Isn't the district court really in the best position to consider each case individually? If they all presented different questions, I would agree with that. But these cases all present the same question, which is, is the right recognized in Johnson 2015? The the right that they're relying on for two to five or three purposes. And this court can, as per Green, can answer that question. Let me ask you this question. What what what you what would you agree or what would you argue that we are precluded from looking at in this authorization phase? If you will. I mean, because. I mean, the one way of looking at your argument is you can get to all this. You can get to timeliness, you can get to you get to each of the arguments that they've raised. I'm just trying to figure out the other side of it. What can't we get to this authorization? Well, I can go back. I don't want to go an entire recitation. I'm not. But what what are we generally precluded from looking at? I can go right to a to a case of you and I are familiar with because I argued it at the authorization stage, which was the Corey Grant case. I mean, we made an argument there that we conceded that that that the new rule in Miller applied retroactively, that it was a substantive rule, even though the Supreme Court hadn't said so yet. But we said we tried to argue that the prisoner in that case couldn't benefit from that rule because the guidelines, though mandatory, afforded enough of an opportunity. But what this court was unwilling to do was to that required some digging into the record to look at exactly what motions were made and what arguments were made at the original sentencing. And that's something that's inappropriate at the authorization stage to be digging through record material that may not be available. So that's an example I would cite to you. Thank you very much. Thank you very much for asking to deny the application. You know, there's one of the last points that you were discussing with counsel on the other side was whether this court is precluded from considering timeliness. And as we put in our briefs, we do believe that the best reading of the statute is that the court is precluded from reviewing timeliness. Again, it's only the prima facie level that the court assesses those three questions for authorization. And then the district court is specifically directed in 2244 to reassess the preliminary determination that this court makes. Again, this court has never, to our knowledge, assessed timeliness at this level. And it is a very thorny issue. Green does not, in our view, apply here. But whether green applies is at least a very difficult question that the district courts should address in the first instance before this court gives full appellate review. And one of the reasons why it is our view that green does not apply here is because Green's holding turned on whether the US Supreme Court has ever recognized that the guidelines are subject to a vagueness analysis. And it is entirely clear that 924C is subject to a vagueness analysis because it both defines the elements of an offense and fixes sentences. And any further dispute or discussion about that should be addressed through the normal process. And a lot of this comes down to what the difference is between the holding of Johnson and the rule announced in Johnson. Really, the rule announced in Johnson is something that is much more broadly applicable than just to the ACCA. And we do think that one sentence that Mr. Sanders read to you from Green that mentioned only being applicable to the Armed Career Criminal Act cannot possibly be the holding of that case when read in context. Again, Judge Greenaway mentioned that it talks about being subject to a statute that fixes sentences. That's what we're dealing with here. It was not in the guidelines. And just very briefly, what the government is asking from this court is really to entertain briefing before the Third Circuit on the authorization question. And they're asking for an opportunity to argue why each case should be dismissed at this authorization stage. It is fully appropriate for that work, which needs to be done by someone, to be done by the district court. And if the district court finds that it is an easy case to dismiss and that no COA should issue, there will be no further appeal to this court. But it's appropriate for this to be done in the orderly manner that the statute prescribes, such that these petitioners are not deprived of their rights to due process. But your adversary points out that that's true, maybe, but all those cases involve timeliness. And it's the exact same issue. And the record really doesn't vary. It has to do with construing a couple of Supreme Court cases. Why can't we just end it right now? And whether we're right or wrong, the Supreme Court can let us know. But why are we going to create a lot of extra work for district courts? So the answer is on the statute prescribed that the district court address timeliness first. It's an important enough question and authority enough question that the district court should address it first. This court has never done that before, despite opportunities to do it in the juvenile lifer scenario and in the mandatory guidelines context. And the process is important because if authorization is denied, there is no further review. And these petitioners cannot even petition for certiorari to the Supreme Court. Well, I suppose there would be no authorization going forward, right? Because then every court of appeals in the first instance would deal with timeliness. And if it ruled, there'd be no opportunity to seek relief, right? Because that would be the end of the question. That would be the end of the question. If every circuit were to deny authorization based on timeliness, then no one would have the opportunity to bring a petition to the US Supreme Court. However, I'll note that there is a split among the circuits on whether these motions are timely. And many circuits, including a few that the government has brought to your attention in recent 28-J letters, have granted authorization because they found a prima facie case and then dealt with the thorny issue of timeliness upon a full appeal. Well, what would be a question we've asked before, but what would be impractical by saying that if, for example, with McNeil and Dupree, that they had committed bank robbery, which by definition is a crime of violence, that they shouldn't be included in the they shouldn't get past the gateway. Your Honor, it's about the same work being done before this court at the authorization stage versus at the district court level after authorization. There's simply no need, I submit, for this court to undertake that work, which needs to be done. This is what district courts do on a regular basis. But if you know from the get-go that they can't win at the district court level, why put counsel for those people through that process? What we know is that if they were, and again, we're not talking about just the two petitioners in this case. We're talking about any other similarly situated petitioners. We know that if they were in fact, if that was in fact the predicate, then they will lose on the merits. But it's really a short step for the district court to do that review of whether that was the underlying offense for the 924C and to deny it under Wilson if necessary. It's a categorical review, right? A categorical review of whether Wilson, yes. And deny in all the other cases. It's a categorical approach, you think? You mean the category of individuals who were convicted of? No, no. Is it the category? The elements is a categorical approach. It's not a conduct approach. That's correct, Your Honor. And so why can't we decide if something's a categorical approach? By category, it fits as a crime of violence, quote unquote. Why does it have to go back to the district court? The court has decided that in Wilson. And so ultimately, the merits are not in play anymore. The question is whether the facts of each case, the record of each case shows that Wilson applies. And that's something that the district court can easily do. Actually, just one follow up. So, okay. So you're relying on Wilson for the fact that it's a merits determination, which we talked about. Okay. Thank you. Okay. Thank you very much. Thank you to both counsel for very well presented arguments. And we'll take the matter under advisement. Thank you.